[No. 6,849.—In Bank.]

HENRY JANIN *v.* SPENCER C. BROWNE, ADMINISTRATOR, ETC.

| 59 | 37 |
|----|----|
| 80 | 107 |
| 59 | 37 |
| 100 | 551 |
| 59 | 37 |
| 114 | 661 |
| 59 | 37 |
| 132 | 152 |

ESTATES OF DECEASED PERSONS—PRESENTATION OF CLAIM.—The complaint alleged that the claim sued upon was presented to the administrator within the time limited in the notice to creditors, and a copy of the claim presented with the verification annexed, together with the indorsements thereon, was attached to the complaint: *Held*, That the presentation was sufficiently averred.

ID.—ID.—NOTICE TO CREDITORS.—A claim may be presented to an administrator before his notice of publication to creditors.

ID.—SURVIVAL OF CONTRACT AFTER DEATH OF A PARTY.—Where an executory contract is of a strictly personal nature, the death of a party by whom work is to be done before its completion, determines the contract, unless what remains to be executed can certainly be done to the same purpose by another; but where the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and

enforce the contract; and *e converso* the personal representative is bound to complete such contract, and if he does not, may be made to pay damages out of the assets.

ID.—ID.—PRESENTATION OF CONTINGENT CLAIM.—A contract to pay money, although it falls due after the death of the obligor, survives; and as a contingent claim may be presented to the representative of the estate, even if it is not to become due until after the expiration of the ten months' publication of notice to creditors.

ID.—EXECUTORS AND ADMINISTRATORS.—Strictly speaking, perhaps, the legal title, even to the personal property of the decedent, does not vest in the administrator or executor under our system. But a special property in the real and personal estate vests in him charged with a trust, not only to apply it to the payment of claims presented, but to do such acts in carrying out contracts of deceased as the law imposes upon him the obligation of performing.

ID.—ID.—ID.—PARTIES.—J. was the owner of land, and furnished B. with money for the purpose of erecting a dwelling-house thereon, and the latter agreed to superintend the building of a house and to effect a sale of the same, together with the land, within twelve months from date, and guaranteed to J. the amount of his investment, including the estimated value of the land with interest. It was further agreed that B. was to retain for his services and commissions one half of the profit that might be obtained on the sale of the property after payment to the plaintiff of his investment and interest, but that the property was not to be sold at a less price than thirteen thousand dollars, unless by consent of both parties; also that if B. could not effect the sale upon the terms and within the time specified, then that J. should be entitled to sell it, and in that case B. agreed to pay to J. the difference between the price received and the amount of his investment and interest. After the house was completed, and before the expiration of the year, and before a sale, B. died, and after the expiration of the time, his administrator having failed to sell the property, J. sold the same, and after presenting his claim for the deficiency, brought his action against the administrator of B.

*Held,* that the contract survived; that the limitation that the property should not be sold for less than thirteen thousand dollars, unless by consent of both parties, applied only to a sale by B., or his representatives; and that B.'s undertaking to pay the deficiency was not a penalty or in the nature of forfeiture.

APPEAL from a judgment for the defendant in the Third District Court, Alameda County. McKEE, J.

*Estee & Boalt* and *C. A. Tuttle,* for Appellant.

The contract itself distinctly negatives the theory that this sale was " dependent upon the existence, or the personal qualities, skill, or services" of Browne, for it provides that Janin may sell after the expiration of one year. (1 Parsons on Cont., p. 131 ; Williams on Ex., pars. 1559, 1560; *Harwood* v.

*Hilliard,* 2 Mod. Rep. 268; *Siboni* v. *Kirkman,* 1 Mee. & W.
417; *Wentworth* v. *Cock,* 10 Ad. & E. 42; *White's Ex'rs* v. *The
Commonwealth,* 39 Penn. 167; *Seymour* v. *Freer,* 8 Wall. 202.)
It was not necessary to make the heirs of Browne parties de-
fendant. (Code Civ. Proc., § 1582.)

*W. H. & J. R. Glascock,* for Respondent.

The contract was personal and confidential in its nature,
and expired with the death of Browne. (*McGill* v. *McGill,* 2
Metc., Ky., 258; *Dickinson* v. *Callahan,* 19 Pa. St. 227; *Bax-
ter* v. *Burfield,* 2 Stra. 1266; *Commonwealth* v. *King,* 4 Serg.
& R. 109; *Cooke* v. *Colcraft,* 2 Wm. Bl. 856; 1 Parson on Cont.,
2d ed., marg. p. 131; 1 Chitty on Cont., 11th Am. ed., pp. 131–
141, *et seq.; Shultz & Co.* v. *Johnson's Adm'rs,* 5 B. Mon. 501;
2 Williams' Ex., 6th Am. ed., bottom p. 1725, *et seq.*) The
contract was one of agency and did not survive the death of
Browne. (Story on Agency, § 490, and cases cited; 2 Kent's
Com. marg. p. 643; Civil Code, §§ 199, 2281, 2355.)

The COURT:

It is alleged in the amended complaint that, on the 19th
day of February, 1875, plaintiff (appellant) was the owner of
four acres of land, which was nearly surrounded by a much
larger tract, the property of defendant's intestate, J. Ross
Browne, and that, on said day plaintiff and J. Ross Browne
entered into a written contract, in words and figures follow-
ing:

"Articles of agreement entered into at the City of San
Francisco, Cal., this 19th day of February, 1875, between
Henry Janin of San Francisco, and J. Ross Browne of Oak-
land, Cal.:

"1. Janin is the owner of four acres of land in Block 5,
Vernon Park, near Oakland, and furnishes to Browne six
thousand dollars ($6,000) in such payments as may be re-
quired under building contracts for the purpose of erecting a
dwelling-house upon the said four-acre tract.

"2. Browne agrees to superintend the building of the said
house, and to effect a sale of the same, together with the

four acres of land, within twelve months from this date, on terms hereinafter specified.

"3. The present value of the land is computed to be twelve hundred dollars ($1,200) per acre, or four thousand eight hundred dollars ($4,800) in the aggregate. Upon that amount Browne guarantees to Janin one and a half per cent. interest per month until the sale of the house and land; and upon each installment of the money furnished for the material and building of the house; also one and a half per cent. a month from the date of payment until the receipt by Janin of the purchase money, and accrued interest, or the receipt of at least one half of the purchase money, and satisfactory security for any deferred payments.

"4. Browne is to retain for his services and commission one half of all the profit that may be obtained on sale of the property, after payment to Janin of the purchase money and interest as before stated; but the property is not to be sold at a less price than thirteen thousand dollars unless by consent of both parties to this agreement.

"5. In case Browne can not effect a sale of the property on the terms hereinbefore stated, within one year from this date, then Janin shall be entitled to sell it, or order the sale thereof; and Browne agrees and binds himself to pay to Janin the difference between the price received and the net valuation of the property, viz., ten thousand eight hundred dollars ($10,800), with interest on the whole amount at the rate of one and a half per cent. per month added thereto until the receipt of principal and interest by Janin; the interest to be computed on the net valuation of the land ($4,800) from this date, and on the cash furnished for the building ($6,000), from the date of the receipt of each installment by Browne.

" 6. As security for the faithful performance of his part of this agreement, Browne gives Janin a deed in fee-simple to two hundred and forty-five acres of marsh land situated near Alviso, and a promissory note signed by the Rev. James Eells, secured by mortgage on property adjoining Pagoda Hill, which securities may be sold or retained by Janin to cover any deficiency that may arise under conditions of sale, as stated in article v ; and should the securities be insufficient to

make good such deficiency, then Browne agrees and binds himself to pay the difference. But if Janin receives the principal and interest in full for his property, then he is to return to Browne the aforesaid deed for marsh land, and the note given by Eells, or on default thereof ten dollars per acre for the land (two thousand four hundred and fifty dollars), and fifteen hundred and eighty dollars ($1,580), with its accrued interest, for the note.

"7. Browne is entitled to the privilege of renting the house, in case he can not sell it, and applying the rent to the payment of the interest accruing to Janin; but not for a longer period than February 19th, 1876, unless by consent of Janin.

"(Signed)                    Henry Janin,      [Seal.]
                             J. Ross Browne.    [Seal.]
"Witness: George H. Arnold."

That plaintiff advanced upon the contract (subsequently enlarged as to the amount) the sum of thirteen thousand six hundred and eight dollars; that, on the twenty-ninth of June, 1875, as security for performance on his part, Browne assigned, transferred, conveyed, and set over to plaintiff two promissory notes for one thousand dollars each, and six hundred and twenty-nine and ninty-five one hundredths acres of land, at which last-named date the house referred to in the contract was completed; that afterwards, and on the 8th day of December, 1875, Browne died without having sold, or contracted to sell, the property. The amended complaint further alleges that, January 3d, 1876, letters of administration upon the estate of the said J. Ross Browne, deceased, were issued to defendant, who caused due notice to creditors to be duly published—the first publication on or about January 20th, 1876; that February 15th, 1876, plaintiff notified defendant, as administrator, that if he, defendant, failed to sell said property by February 19th, 1876, plaintiff would proceed to sell under said agreement; that defendant failed to sell, as aforesaid demanded, and thereupon plaintiff placed the property in the hands of auctioneers for sale; that an auction was had October 14th, 1876, but the highest sum bid being one thousand dollars, the property was withdrawn; that the Eells notes were paid August 8th, 1876, and April 30th, respectively, and

the proceeds deposited in bank to await the sale by Janin; that October 25th, 1876, plaintiff presented to defendant, as administrator, a claim against the estate for the difference, or deficiency, between the sum of seventeen thousand seven hundred and seventy-three dollars and twenty-two cents, United States gold coin, and the amount to be derived from the sale of the lands and premises aforesaid—a copy whereof is made part of the complaint; that said claim was rejected by defendant, administrator, and on the 20th of December, 1877, plaintiff sold said property to James Eells for nine thousand dollars; that before the commencement of this action, plaintiff notified defendant, as administrator as aforesaid, that he had sold the property described in the complaint as above stated, and rendered to defendant a full schedule or statement of the account between them, and demanded of defendant the payment of the balance by said schedule shown to be due. By said schedule or statement, the estate was charged with the sum of twenty-one thousand and thirty-three dollars and ninety-five cents, credited with proceeds of the sale—nine thousand dollars—and the amount collected upon the Eells notes—two thousand five hundred and sixty-two dollars and sixty-five cents—leaving a balance of nine thousand four hundred and seventy-one dollars and thirty cents. The prayer is that the last-named sum be adjudged due from the estate, and that the lands held as security as aforesaid be decreed to be sold—the proceeds to be applied in payment, and that plaintiff have judgment against the estate for the deficiency.

The demurrer of defendant was sustained, and, plaintiff failing to amend, judgment was entered against him; from which judgment plaintiff appeals.

1. It is objected to the complaint that it fails to show that the alleged claim against the estate of J. Ross Browne, deceased, was presented to the administrator within the time limited in the notice to creditors. The complaint states that on or about the 25th day of October, A. D. 1876, and within ten months from the first publication of notice to creditors, "as hereinbefore set forth," the said plaintiff duly presented his claim, etc. It may be admitted that the complaint should state the facts relied upon as constituting a due presentation.

Here a copy of the claim presented, with the verification annexed, together with the indorsements thereon, is attached to the complaint. We are at a loss to imagine how the presentation could be more fully set forth or averred.

It is suggested, however, that neither the contents of the alleged notice to creditors, nor the period or mode of its publication, is alleged.

Section 1491 of the Code of Civil Procedure provides that the time expressed in the notice must be ten months after its first publication. By section 1493 (as the same stood at the time of the alleged publication) it was provided that all claims arising upon contracts made after July 1st, 1874, must presented within ten months after the first publication of the notice, whether the same be due, not due, *or contingent.*

Section 1490 provides : "Every executor or administrator must, immediately after his appointment, cause to be published in some newspaper of the county, if there be one, if not, in such newspaper as may be designated by the Court, a notice to the creditors of the decedent, requiring all persons having claims against him to exhibit them, with the necessary vouchers, to the executor or administrator, at the place of his residence or business, to be specified in the notice. Such notice must be published as often as the Judge or Court shall direct, but not less than once a week for four weeks. The Court or Judge may also direct additional notice by publication or posting." The allegation of the complaint, in that regard, is as follows : "That the said Spencer C. Browne, administrator as aforesaid, in pursuance of an order of said Probate Court of Alameda County, duly caused a notice to creditors in due form to be published in the newspaper designated by said Court, and that the first publication of said notice was made on or about the 20th of January, A. D. 1876." It will be admitted that it is not material to inquire whether the averment last recited is a statement of facts such as show a compliance with section 1490, when it is called to mind that a claim may be presented to an administrator before his publication to creditors. (*Ricketson* v. *Ricketson,* 19 Cal. 330.) It is not the publication of notice which is the prerequisite to the maintenance of an action or a claim, but the proper presentation of the claim and its rejection.

2. It is urged that the contract simply made J. Ross Browne the *agent* of plaintiff, and that it was personal and confidential in its nature, and expired with the death of Browne.

"Where the contract of the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract." (Parsons on Cont. 131.) *E converso,* the personal representative is bound to complete such a contract, and, if he does not, may be made to pay damages out of the assets. (*Siboni* v. *Kirkham,* 1 Mee. & W. 418.) But where an executory contract is of a strictly personal nature, the death of a party by whom work is to be done before its completion determines the contract—unless what remains to be executed can certainly be done to the same purpose by another. (Parsons on Cont. 131.) Even if it be admitted that the contract we are considering was personal—and involved the placing by plaintiff of peculiar confidence in the skill and judgment of Browne, in so far as it authorized him to superintend the building of the house—the house was *completed* before the death of Browne. What remained to be executed—the sale of the property—could be done as well by the administrator as by Browne, had he lived.

The illustrations ordinarily put of *personal* contracts on which no liability attaches upon the executor or administrator, unless a breach occurred in the life-time of the deceased, are: A promise to marry; the contract of a master to instruct his apprentice; of an author to compose a particular work; of a physician or lawyer to render services. But, probably, any other contract, from which it appeared that it was the intention of the parties that the service should be performed by the contractor, in person alone, would terminate with his death. (*Shultz* v. *Johnson, Adm'r,* 5 B. Mon. 501.) In such case, however, the contract would be held *personal only* to the extent that it clearly appeared from its language that it was the intention that one of the parties should have the benefit of the personal service of the other.

A contract to pay money although it falls due after the

death of the obligor, survives, and, as a contingent claim, may be presented to the representative of the estate, even if it is not to become due until after the expiration of the ten months' publicatiōn of notice for the presentation of claims. As said by the Supreme Court of Pennsylvania—"What is the difference between an agreement to pay at a future period or on a future contingency?" (*White's Ex'rs* v. *Commonwealth*, 39 Pa. St. 176.) If the contingency on which the payment depends is the failure to do an act which it is the duty of the administrator to perform, the money becomes due on his failure to perform.

Strictly speaking, perhaps, the legal title, even to the personal property of the decedent, does not vest in the executor or administrator under our system. But a special property in the real and personal estate vests in him, charged with the trust, not only to apply it to the payment of claims presented, but, from the nature of the trust and his representative capacity, to do such acts in carrying out contracts of deceased as the law imposes upon him the obligation of performing. The defendant should have sold the land of plaintiff, not on application to the Probate Court, as part of the estate—for it is not part of the estate—but as the representative of deceased, charged with the duty of performing his contracts where they involve no special skill or taste.

Where one contracted with another to supply him with a certain quantity of slate monthly, for a definite period, and the latter died before the expiration of the period, it was held that the administrator was properly sued for refusing to receive slate after the intestate's death. (*Wentworth* v. *Cock*, 10 Ad. & E. 42.) And in *Siboni* v. *Kirkman*, 1 Mee. & W. 421, Parke, B., said: "Executors are responsible on all the contracts of the testator broken in his life-time, and there is only one exception with regard to their liability for contracts broken after his death; that is, that they are not liable in those cases where personal skill or taste is required."

In construing contracts it is permissible for a Court to place itself as near as may be in the position of the parties. The complaint alleges that the deceased was the owner of a large tract of land adjacent to and surrounding the land of plaint-

iff on which the house was erected, " and was desirous of improving and building up said neighborhood, for the purpose of attracting purchasers for his said land." With this inducement he agreed to improve the lands of plaintiff, to superintend the house erected by the expenditure of plaintiff's money, and to guarantee him a certain profit upon the investment. All that required any peculiar skill, taste, or judgment was done by deceased in his life-time. We are of opinion that the contract and right of action upon it survived.

3. We think it clearly appears from a reading of the contract that the limitation that the property should not be sold for less than thirteen thousand dollars, " unless by consent of both parties," applied only to a sale by Browne, or his representatives.

4. If the right to sell reverted to plaintiff at the expiration of the year, we can not see that it was inequitable on his part to notify defendant, as administrator, that he intended to stand upon his contract. If defendant had succeeded in finding a purchaser for a greater sum than nine thousand dollars, prior to the sale by plaintiff, and had notified plaintiff thereof, that fact might have constituted a complete or partial defense. But this was a matter to be pleaded by defendant. Nor do we understand that Browne's undertaking to pay the deficiency was a penalty, or in the nature of *forfeiture*, which can not be enforced in equity by a foreclosure of the collaterals given to secure the payment.

At the death of Browne he occupied a very different position from a mere broker or agent, employed merely to sell the land for a commission, or part of the profits. He had entered into a covenant with plaintiff, that if he failed to sell, and plaintiff sold for less than a sum named, he would make good, with interest, the plaintiff's loss upon the transaction. This promise was one of the terms of the contract—as much so as any other. This guaranty of a certain profit was an inducement, probably the only inducement, which led to the investment by plaintiff.

Judgment reversed and cause remanded, with direction to overrule the demurrer, with leave to answer.

SHARPSTEIN, J., dissenting:

In *Brown* v. *Pforr*, 38 Cal. 550, the owner of a piece of real estate agreed to pay a broker a stipulated sum if he would find a purchaser for it at a specified price within one month. Before the expiration of the month within which the broker by the terms of the contract was allowed to find a purchaser, he found one who was willing to pay the specified price for the property. But the owner had previously revoked the power of the broker to sell it, and refused to accept the offer, which if the agreement had not been revoked would at least have entitled the broker to the stipulated commission. The Court, however, held that the owner of the property had a right to revoke the power to sell at any time before a purchaser was found without incurring any liability to pay the broker anything. The Court said : "It is a general rule that an agency, whether to sell land, or to do any other act, unless coupled with an interest, or given for a valuable consideration, is revocable at any time."

An agency not coupled with an interest does not survive the death of either the principal or agent, and the principal upon which the rule is founded, "applies *a fortiori* to the death of the agent." (Story on Agency, § 490.)

The defendant's intestate in this case acquired no interest in the property which the plaintiff authorized him to sell within a specified period. (*Hunt* v. *Rousmanier*, 8 Wheat. 174, 203 ; *Travers* v. *Crane*, 15 Cal 12, 19 ; Story on Agency, § 489.)

The building of a house by the plaintiff, and the superintendence of the building of it by the defendant's intestate, together with the security which the latter gave for performance on his part, doubtless constituted a consideration for the contract which would have prevented either of the parties from revoking it without the consent of the other while both were living. But that would not prevent its revocation by the death of either. A power coupled with an interest, and none other survives the death of either the principal or agent. A contract of agency based upon a consideration does not survive the death of either. I do not understand it to be claimed that if the defendant's intestate had died before any

thing had been expended in improving the property, the contract would have survived his death. And yet that expenditure was a part of the consideration of the contract, and gave defendant's intestate no more interest in the property than he would have had under a mere naked power to sell for a stipulated commission. In no sense could that be held to be an interest in the property itself.

When said intestate died, two months remained of the time within which he was authorized to sell the property at or above the price specified in the contract, and it is claimed that the defendant, as administrator of the estate of the deceased, might have sold said property the same as his intestate might, if he had lived. An administrator may, by leave of the Probate Court, sell any property belonging to the estate of his intestate. But the property which it is claimed he might have sold in this case did not belong to said estate. The estate had no interest in it. A sale of the entire interest of the estate in said property would have transferred nothing to the purchaser. The administrator could not obtain authority from the Probate Court to sell property in which the estate had no transferable interest. An order authorizing the administrator of the estate of B. to sell the property of J. would be something new in probate proceedings.

It therefore seems to be sufficiently evident that the contract which the defendant's intestate entered into with the plaintiff was one for personal services, which could only be performed during the life-time of the party contracting, and was subject to the implied condition that he should be alive to perform them, and that he having died before performance and before the expiration of the time within which he was to perform, his administrator is not liable in an action for the breach of the contract occasioned by his death.

McKEE, J., dissenting:

The contract set out in the prevailing opinion is of a threefold character.

1. It is a personal contract by which the plaintiff engaged the skill and ability of the deceased, in his life-time, to superintend the construction of a dwelling-house.

2. It is a contract of agency, whereby the plaintiff appointed the deceased as his agent or broker to sell the premises, after the construction of the dwelling-house, for commissions contingent upon making a sale for a specified amount within a certain time.

3. It is a contract of guaranty, by which the deceased, who was the superintendent and agent.or broker of the plaintiff, covenanted that the premises would be sold within the time specified in the contract for a sum of money sufficient to pay the plaintiff the computed value of his property and the money expended in the construction of the dwelling-house and interest at the contract rates, reserving for himself, out of any surplus, commissions for making the sale.

Before the contract time for making the sale had expired the decedent died; and his death had its legal effect upon the contract and its several parts. As to the first part, the contract terminated with his death; for, being a contract for personal services, it was unassignable in his life-time, and did not survive his death. *Actio personales moritur cum persona.* No cause of action therefore existed, nor, indeed, is any claimed against the estate of the deceased upon this part of the contract; for he had, in fact, before his death, performed it to the satisfaction of the plaintiff.

As to the second, the death of the deceased terminated the relation of principal and agent, or broker, for the sale of the premises, and also the authority to sell; for as such authority was a personal confidence, it is not to be presumed that the principal himself intended that it should pass to the representative of the deceased agent, unless there is some special stipulation in the contract itself to that effect. No such stipulation is to be found in the contract. The administrator of the deceased had, therefore, no authority whatever, under the contract, to sell the property of the plaintiff. The plaintiff had never employed *him* for that purpose; and it was no part of his administrative duty to sell property which does not belong to the estate. How could the administrator make such a sale? From whom has he received any power or authority to sell? Certainly not from the principal of the deceased agent. Certainly not from his intestate—the deceased

agent of the principal. And yet, it is sought to create a lia-
bility against the estate of his intestate on account of a sale
which, in his life-time, the intestate had contracted to make,
but which he, by his death, was prevented from making, and
which, after his death, his administrator had neither power nor
authority to make. I can not see how the estate of the deceased
can be made liable for a failure to sell in his life-time, before
the time limited in the contract, when performance was ren-
dered impossible. Estates of deceased agents are liable only
in the matters of their agency, where the agent has been
guilty of negligence or misconduct, or misappropriation in
the course of the agency, or where a sale has been partially
made by him in his life-time and remained incomplete at his
death. Nothing of that sort is claimed in this case. There
was neither negligence nor misconduct; there was no misap-
propriation in the course of the agency. No sale had been
partially made which remained incomplete at the time of his
death. The agent was prevented by death from making a
sale.

And as to the guaranty that a sum of money would be
realized upon a sale of the property sufficient to pay the
plaintiff the value of his land and improvements, and inter-
est on the value and commissions of sale, the same legal effect
followed the death of the agent within the time limited for
making a sale. The obligation of guaranty was discharged;
for the act of God, which resulted in the death of the agent,
prevented a sale of the property, and, of course, prevented
performance of any guaranty dependent upon the sale. A
Court will never presume an intention to require performance
of any contract, where performance is prevented by an act of
God.

Unquestionably, an absolute promise, without exception or
qualification, that a certain thing shall take place, which is
neither impossible nor unlawful at the time of the promise,
binds the person to perform, unless the situation of the per-
son so changes as to render performance impossible. That
was just the condition of things at the death of the agent.
His authority to make a sale of the plaintiff's property ter-
minated by his death. It became impossible for him to do
what he had undertaken to do. And his guaranty dependent

upon a sale was revoked by the same cause which rendered the sale impossible.

In my judgment the plaintiff has no claim arising out of the contract which can enforced against the estate of the deceased.