FARLEY et. al. v. SECOR et al.

(Supreme Court, Appellate Division, Second Department.   April 9, 1915.)

1. EXECUTORS AND ADMINISTRATORS ☞135—OPTION CONTRACT—CONSTRUCTION —RIGHTS OF OPTIONEE'S ESTATE.

Before expiration of a contract giving an option to purchase and give a mortgage in payment, the optionee died and thereafter the contract, after being modified in certain particulars, was confirmed by his executors and trustees and the owner.   In two subsequent renewals of the contract the owner acknowledged that the optionee's estate had elected to purchase, but the election was deferred by a new arrangement.   After the owner's death the estate of the optionee refunded to his executor, on request, taxes which the estate had agreed to pay.   Due notice was given by the executors and trustees of the optionee that they had elected to exercise the option.   *Held*, that the optionee's estate had the same right as to giving a mortgage in payment as the optionee himself would have had if living, and could not be required to purchase for cash.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 551–556; Dec. Dig. ☞135.]

2. EXECUTORS AND ADMINISTRATORS ☞135—EXERCISE OF OPTION—AUTHORITY.

The executors and trustees of an optionee's estate have authority to exercise an option to purchase land, where such option is part of the estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 551–556; Dec. Dig. ☞135.]

3. TRUSTS ☞249—LAND SALE CONTRACT—ACTION BY TRUSTEES—RIGHT.

Where the deceased optionee's trustees, acting within their authority, elect to exercise an option to purchase land, they are the proper persons to sue on the option after its conversion by such election into a contract for the sale of land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 355, 360; Dec. Dig. ☞249.]

4. PERPETUITIES ☞6 — TESTAMENTARY TRUST — VALIDITY — SUSPENSION OF POWER OF ALIENATION.

A direction of the will to pay the income of property to testator's widow "for a term of five years from the date of my decease" limited the time of enjoyment of the remainder on a term depending on a life in being, so

that such enjoyment must begin when that life ended, and hence did not render the trust thereby created void, as unduly suspending the power of alienation.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. ☞6.]

5. PERPETUITIES ☞6—SUSPENSION OF POWER OF ALIENATION—WHAT CONSTITUTES.

The absolute power of alienation is suspended where there are no persons in being by whom an absolute fee in possession can be conveyed.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. ☞6.]

6. SPECIFIC PERFORMANCE ☞97—EXERCISE OF OPTION—TENDER OF PERFORMANCE—WAIVER.

Where the trustees of the optionee's estate elected to exercise the option, and the executors of the owner's estate not only failed to consent to performance, but denied the right of the trustees to give back the purchase-money mortgages provided for in the option contract, their action constituted a refusal, such as relieved the trustees from making strict tender of performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 286–298; Dec. Dig. ☞97.]

7. SPECIFIC PERFORMANCE ☞126—LAND SALE CONTRACT—ABATEMENT FROM PURCHASE PRICE—VALUE OF DOWER.

Where, in an action to specifically enforce an option converted into a contract of sale by an election to exercise the option, the widow of the deceased owner refuses to release her dower in the land, the purchase price can be abated in accordance with the value of her dower.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 55, 401–405; Dec. Dig. ☞126.]

8. VENDOR AND PURCHASER ☞351—CONTRACT TO SELL LAND—BREACH—MEASURE OF DAMAGES.

The measure of damages recoverable, in lieu of specific performance, for the owner's refusal to perform an option contract converted by an election to exercise the option into a contract of sale, is the difference between the stipulated purchase price and the value of the land, and not the payments which have been made under the option.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 1017, 1047–1058; Dec. Dig. ☞351.]

Appeal from Special Term, Westchester County.

Action by Robert E. Farley and another, as executors and trustees, etc., against Henrietta T. Secor and others. From judgment dismissing the complaint, plaintiffs appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

William L. Rumsey, of New York City, for appellants.

R. E. Digney, of White Plains, for respondents Secor and Farmers' Loan & Trust Co.

F. M. Thompson, of White Plains, for infant respondents.

THOMAS, J. [1] Hitchcock and Secor made an agreement whereby, among other things, the former was enabled within five years to call for a deed of certain land at "a price not less than at the rate of $1,500 * * * per acre, which deed may run to the party of the second part, or any other person he shall designate." The contract

contemplated (1) a purchase by Hitchcock personally, in which case he was enabled to give back a mortgage of $80,000; (2) a sale by Hitchcock to a third person, in which case he should divide all sums above $100,000; (3) a sale by Secor for not less than $1,700 per acre, in which case he should divide all profit over $100,000 and return to Hitchcock the $3,000 which it was agreed that he should pay yearly to Secor. The price at which Hitchcock could buy or sell to another was stated at not less than the rate of $1,500 per acre, because, if he got more than $100,000 from another person, he must divide it, but the minimum price was fixed for his own purchase. There is no uncertainty as to the price Hitchcock was obliged to pay. After some three years Hitchcock died, and Secor and the estate of Hitchcock, who left a will and codicil appointing executors and trustees, modified the existing contract in certain particulars, but otherwise expressly confirmed it. The same thing happened twice afterwards during Secor's life, who not only recognized Hitchcock's estate through at least one of his executors and trustees, but increased the price that should be paid each year, which was paid. In two of these renewals Secor acknowledged that the Secor estate had elected to purchase, but the election was deferred by the new arrangement.

After Secor's death his executor insisted that the estate of Hitchcock should refund to it one-half the taxes which the estate of Hitchcock had agreed to pay, and actually received the same. The executors and trustees of Hitchcock gave due notice that they elected to exercise the option; but Secor's executor gave no assent, and upon insistence by plaintiff it stated that it had referred the matter to its lawyers. Interviews with the lawyer and a direct representative of Secor's executor and trustee show that the latter took the position that the Hitchcock estate was not entitled to give back the $80,000 purchase-money mortgage provided in the original contract and continued in three contracts after Hitchcock's death. Then this action was brought.

If it was not intended that Hitchcock's estate should have the same rights as to the $80,000 mortgage as Hitchcock himself, why was it confirmed in each of the contracts after Hitchcock's death? Hitchcock died while the first contract had two years to run. By the respondent's contention the Hitchcock estate upon his death was reduced to purchase for cash under the same contract that enabled Hitchcock to give the mortgage. The contracts show the parties intended that Hitchcock's estate should have the same status that the contract gave him. It was not expected that Hitchcock dead could personally buy the land save through his representatives and trustees.

[2, 3] It is also considered that the plaintiffs were authorized to exercise the option. It was an asset of the estate, and it was their duty to preserve it, if it seemed to them valuable. Before the option was exercised, the estate had no interest in the land; but a cause of action would accrue for a breach of the agreement, and the plaintiffs owned the option and a cause of action for its breach. They properly exercised the option, whereupon an interest in land arose. That interest vested in them, because it fell into the residuary estate under Hitchcock's will, of which plaintiffs are the trustees. Hence they are the

proper persons to bring an action on which is now a contract for the sale of land.

[4, 5] It is urged that the trust is void. Passing the immorality of taking renewals of the contract and money through negotiation with the trustees and then disclaiming their ability, it appears that the power of alienation is not unduly suspended. The direction is to pay the income to the widow "for a term of five years from the date of my decease." It could not be paid to her if she were not alive. Hence it was intended that the term should fall within her life. If she died within the time, the trust as to payment of income fell, not only because the term could not extend beyond her life, but because there would be no beneficiary of the income. I assume that it will not be contended that the failure of the precedent estate would destroy the remainder. Nor was the time fixed for the enjoyment of the remainder too remote. As it was limited for the time of enjoyment on a term that was dependent on a life in being, it would in any case take effect when the life ended. That the testator intended the division to fall within the life of the widow is evidenced in some degree by the direction that one-half of the land is given to her in remainder. The absolute "power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed." Robert v. Corning, 89 N. Y. 225, 235. The life tenant and the remaindermen could convey such fee, because by the consent in writing the fee could be vested in the remaindermen at any time.

[6, 7] The evidence shows that the plaintiffs duly elected, and that the executors not only failed to consent to performance, but that they denied the right of the plaintiffs to give back the purchase-money mortgages. Their action is tantamount to refusal, and in such case the plaintiffs were not required to make strict tender of performance. Oppenheimer v. Knopper Realty Co., 50 Misc. Rep. 186, 187, 98 N. Y. Supp. 204. The widow's position may only be inferred from her answer in the action. But, if she refuse to release her dower, the purchase price can be abated in accordance with its value. Bostwick v. Beach, 103 N. Y. 414, 9 N. E. 41.

[8] There seems to be no insurmountable reason for refusing specific performance. But, should such obstacle arise, the plaintiffs can recover damages for the difference in value between the stipulated purchase price and the value of the land. The damages are not the sums that have been paid under the option, as such payments were made, not as a part of the purchase price or for the purpose of applying thereon, but rather to enable Hitchcock or his estate to buy at the agreed price per acre. What the damages would be if the action were brought at law for a breach of the option is not now considered; but, where damages are given in lieu of specific performance on account of the willful refusal of the vendor to convey, the rule is as above stated.

. The judgment should be reversed, with costs to the appellants to abide the final award of costs, and a new trial granted, which will enable the trial court to conform its decision to the views herein expressed upon the facts as they now appear, and to make such provision for closing the title and making adjustments thereon as the circumstances shall demand. All concur.