[L. A. No. 9606. In Bank.—March 27, 1928.]

In the Matter of the Estate of LUELLA FULMER, Deceased. GLENN A. FULMER, Administrator, etc., Appellant, v. PACIFIC SOUTHWEST TRUST AND SAVINGS BANK et al., Respondents.

Horace W. B. Smith, P. R. Lund and Francis O. Hoover for Appellant.

C. Kelley Hardenbrook and Fred A. Shaeffer for Respondents.

WASTE, C. J.—This is an appeal by Glenn A. Fulmer, as administrator, from an order settling and disallowing certain portions of the first and final account of his administration of the estate of his mother, Luella Fulmer, deceased. In the account the administrator charged himself with the receipt of cash in the sum of $39,309.75, and claimed credit for disbursements totaling $42,340.30. The difference of $3,030.55 was charged as an indebtedness owing to him by the estate. Subsequent to the filing of the account certain creditors of the deceased filed objections thereto, and upon the hearing the court charged the administrator with receipts amounting to $39,609.75 and allowed credits only in the sum of $16,875.25, leaving as a balance "the sum of $22,734.50 in cash belonging to said estate." The court disallowed many items in part, and several items in full. It is from that part of the order which disallowed certain items in full that the administrator has appealed.

Prior to her death the decedent, with certain other parties, on July 5, 1918, executed an instrument in writing, by the terms of which the deceased and her co-contractors were given an option upon a tract of land situate in Tehama County. The California Farms Company was designated therein as the seller, and the purchase price was fixed at $60,805.50. Upon the execution of this instrument the prospective purchasers made an initial payment of $5,000, to which decedent contributed $2,018.61. Thereafter, and on December 1, 1918, other payments having become due under the agreement, the decedent paid $5,044.50 on account of the purchase price of the land, and executed to the seller

her promissory note in the sum of $5,700. There appears to be a divergence of opinion between the parties as to the character of the instrument under which these payments and those subsequently made by the administrator were made. The respondent creditors urge that it constituted a mere option, while the appellant contends that the option ripened into a binding contract for the purchase and sale of the real property therein described. The instrument declares, in part, that it "is and shall be construed as an exclusive option until December 1st, 1918, for the purchase of said land." In our opinion it is only reasonable to conclude that the payment by decedent of $5,044.50 on that date, and the execution of her promissory note for $5,700 on the same day, constituted an election to act upon the option, thus causing it to assume the character of a binding contract for the purchase of the land upon the terms specified.

The decedent died January 1, 1919, and letters of administration of her estate were issued to the appellant on March 26, 1919. During the course of his administration of the estate the $5,700 promissory note (*supra*), executed by the decedent, matured, and after presentation it was duly allowed as a claim against the estate. On August 15, 1919, the appellant petitioned the probate court for an order authorizing the payment and discharge of the claim as allowed, with the accrued interest thereon in the sum of $313.34, together with the accrued interest on the deferred payments under the contract amounting to $856.11. The payment of these sums, totaling $6,869.49, together with "any further interest not yet accrued when the same shall become due and payable," was authorized and directed by an order of the probate court bearing date August 26, 1919. Under the authority of that order the appellant paid $6,869.49 as principal and interest under the agreement of purchase, claiming credit therefor in his account. This item was wholly disallowed by the court upon the hearing of the account and the objections thereto.

At various times subsequent to the date of the order, and also under and by virtue of an order dated July 26, 1920, the appellant made other payments from the funds of the estate covering items of principal, interest, taxes, and repairs, all arising out of the agreement to purchase the Tehama County property. These orders, after setting forth

the execution by the decedent and her co-contractors of the purchase agreement and the maturity of certain payments thereunder, respectively declare that "it is ordered, adjudged and decreed that the administrator pay said note [the $5,700 promissory note] and interest, and any further interest not yet accrued when the same shall become due and payable, unless thereafter for good cause this order shall be set aside or modified by the court upon a similar petition and notice," and "it is ordered, adjudged and decreed that the administrator pay any installments due and that may hereafter become due and payable, unless thereafter for good cause, this order shall be set aside or modified by the court upon a similar petition and notice." In order to clarify and succinctly present the situation, the amounts so paid by the appellant and wholly disallowed by the court below may be tabulated as follows:

| Amount | Purpose of Payment | Authority Claimed Therefor |
|---|---|---|
| $3000.00 | Principal and interest on purchase contract | Order Aug. 26, 1919 |
| 2400.00 | " " " " " " | " " " " |
| 6869.49 | " " " · " " " | " " " " |
| 6078.38 | · " " " " " " | " July 26, 1920 |
| 856.10 | " " " " " | " Aug. 26, 1919 |
| 1991.55 | " " " " " " | " " " " |
| 2.30 | " " " " " | " " " " |
| 342.50 | " " " " " | " July 26, 1920 |
| 60.75 | Taxes on property covered by " " | |
| 304.47 | " " " " " " | |
| 266.55 | " " " " " " | |
| 13.20 | Repairs on " " " " " | |
| 76.35 | " " " " " " " | |
| 159.60 | " " " " " " | |

That some of the above enumerated disbursements may have been made without prior sanction of the probate court is not necessarily fatal to their allowance. The sums of money paid out for taxes and necessary repairs are such expenses as the administrator must pay in the care and management of the estate. (*People* v. *Olvera,* 43 Cal. 492; *Estate of Clos,* 110 Cal. 494, 502 [42 Pac. 971]; *Estate of Smith,* 118 Cal. 462, 466 [50 Pac. 701].) In *Estate of Smith, supra,* it is stated to be "the duty of the executor, without special direction of the court, to preserve the

property of the estate, and he does not require leave of the court so to do, and it is a question how far an order so obtained will protect an administrator either in doing or in omitting to do something which might be deemed important. When the court is so consulted the heirs are not specially cited, but on the settlement of the accounts of an executor they are called in and have a right to question the acts of the executor and to have an appeal to this court upon any determination which may be made. The previous consent to the acts of the executor cannot limit their inquiry as to the lawfulness of the acts done or the duty of the executor to do that which has been omitted. Ordinarily, it would determine the question of good faith, and quite often that is the only matter in issue. Hence, it is always an advantage to have such permission. Still, the failure to obtain it does not render the expenditures made improper. The only result is, that the matter is yet to be passed upon.''

█ Application of this rule disposes of the contention of respondents that the court orders above referred to were void as being made *ex parte* and without the prior giving of notice. Payments made without a court order are made at the peril of the personal representative (*Estate of Fernandez,* 119 Cal. 579, 581 [51 Pac. 851]); but, if the acts of an administrator are in pursuance of, and in accordance with law, he need not necessarily secure an order of court to protect him in the performance of his duties. (*Estate of Bottoms,* 156 Cal. 129, 133 [103 Pac. 849].)

█ It is customary, upon the termination of the administration of an estate to marshal the assets for the purpose of paying and discharging the debts, without preference to those holding unsecured obligations. Section 1513 of the Code of Civil Procedure, however, would seem to warrant a variation from this procedure in that it provides, in substance, for the payment and discharge, at any time pending administration, of interest-bearing obligations existing against the estate. The appellant was, therefore, justified in seeking and being granted permission to pay, with the accrued interest, the greater. number of the above tabulated amounts. That section 1513 does constitute an exception to the general rule was recognized in *Estate of Spanier,* 120 Cal. 698, 700 [53 Pac. 357].

■ Respondents contend that the amounts were improvidently paid by the administrator. In support of this contention it is urged (1) that an administrator is without authority to purchase real property with the funds of the estate; (2) that the real property involved did not equal in value the price agreed to be paid; (3) that the seller, California Farms Company, was unable to deliver title thereto. Failure to seasonably investigate and determine these matters in advance of the making of the above enumerated payments on the purchase agreement is urged as justification for their disallowance by the probate court. Preliminarily it may be said that the appellant's conduct did not, in any sense of the word, constitute a purchase of real property. The decedent, with her co-contractors, had assented to the terms of the option agreement, and had evinced a willingness and determination to proceed thereunder by electing to make payments upon the purchase price of the property. The appellant, as administrator, merely proceeded to carry out the terms of said agreement as contemplated by the parties. An administrator may undertake to perform valid and uncompleted contracts which have been entered into by his intestate. (*Estate of Hincheon,* 159 Cal. 755, 762 [36 L. R. A. (N. S.) 303, 116 Pac. 47]; *McCann* v. *Pennie,* 100 Cal. 547, 551 [35 Pac. 158]; *Janin* v. *Browne,* 59 Cal. 37, 44.) In *Janin* v. *Browne, supra,* the court said that: "Where the contract of the deceased is of an executory nature, and the personal representative can fairly and sufficiently execute all the deceased could have done, he may do so and enforce the contract. . . . *E converso,* the personal representative is bound to complete such a contract, and if he does not, may be made to pay damages out of the assets."

"This principle has been extended to contracts for the purchase of real property. In *Jones* v. *Hert,* 192 Ala. 111 [68 So. 259, 260], the court declares: 'Purchase money due from a deceased vendee upon a valid contract of sale *is such a debt of the decedent as the representative may rightfully pay. . . .*

" 'The presumption is that the party making a contract intends to bind his executors and administrators, unless the contract is of that nature which calls for some personal quality of the testator, or the words of the contract are such that it is plain no presumption of the kind can be indulged

in. .... Where a party has entered into a contract to purchase real estate, and dies before it is conveyed to him and before he has paid for it, his heir or devisee is entitled to have his executor pay for the realty out of the personal estate. .... The executor is not permitted to violate the contract of his testator after the latter's death. .... '

"The result is the contract of sale was in full force and effect when the vendee died, and the amount due upon same was a valid charge against her estate, unless the contract was rescinded or terminated by mutual consent. .... " (To the same effect, see *McCann* v. *Pennie, supra,* at page 552.)

In the case of *Janin* v. *Browne,* as here, the agreement provided for a forfeiture of all sums paid thereunder in the event of a breach by the vendee. Upon this phase of the matter the court held that this "was in no sense an option to the vendee to abandon the contract and defeat her unconditional promise to pay the purchase price of the lot, but was intended for the purpose of giving the vendor some remuneration for the land in case of a default in the purchase-money installments." The case of *Farley* v. *Secor,* 167 App. Div. 80 [152 N. Y. Supp. 787, 789], goes so far as to hold that an option on real property secured by a decedent prior to his death is an asset of the estate which the executor is in duty bound to preserve, if to him it seems valuable.

We are therefore of the view that appellant's attempt in good faith to comply with the terms of his intestate's agreement to purchase the Tehama County property should have received the sanction of the probate court upon the filing of the first and final account. There is nothing in the record to impeach his good faith, and his contention that in this particular transaction he was acting in what he deemed to be the best interest of the estate appears to have substantial support. Among other things, the appellant testified, in effect, that he proceeded to perform said agreement only under advice of counsel, and in the belief that the property was a valuable asset of the estate and an investment upon which it would be well for the estate to complete payment. Having taken this view of the matter, he went into possession of the property, and remained thereon for approximately three years. During this period of occupancy,

he paid the several amounts listed above. When it became evident to him that the land was probably worth less than the $19,000 still remaining due under the agreement, he abandoned the property in the month of October, 1921, and made no further payments or disbursements on account thereof. ■ As appellant was bound to complete the contract made by his intestate, the fact that the property subsequently proved to be of less value than originally assumed would not, of itself, warrant an assumption of bad faith, or imprudent conduct upon the part of the administrator. (*Estate of Armstrong*, 125 Cal. 603, 605 [58 Pac. 183].)

■ Nor do we think the fact, subsequently developed, that the seller was unable to convey title would, of itself, render the payments made by appellant improper. It appears that the seller, California Farms Company, at the time it executed the contract with the decedent and her co-contractors, had secured, in its own right, the assignment of a contract covering the sale of said real property theretofore executed by the then owner, one Mary K. Spooner. Certain payments were made under this latter agreement by the California Farms Company to the owner. Upon subsequent default being made in the installment payments, Mary K. Spooner instituted an action for the cancellation of her contract to sell, and to quiet her title in and to said real property. This action terminated in her favor in the month of October, 1924, when a decree was entered as prayed for. It is thus apparent that not until three years subsequent to the appellant's abandonment of the property in 1921 was it judicially determined that the California Farms Company would be unable to perform its agreement to sell and execute a good and sufficient deed to the premises. In passing, it may be said that the decisions are numerous to the effect that one may contract to convey property to be subsequently acquired. (*Lemle* v. *Barry*, 181 Cal. 6, 9 [183 Pac. 148]; *Anderson* v. *Willson*, 48 Cal. App. 289, 294 [191 Pac. 1016].) It follows, therefore, that the appellant could properly make payments to the seller, California Farms Company, under the purchase agreement executed by his intestate even though, at the time such payments were made, the seller had not, as yet, perfected its title.

We therefore conclude that the lower court erred when it disallowed the full amounts to have tabulated (*supra*). The appellant should have been allowed in full the amount of the promissory note, executed by the decedent during her lifetime, in the sum of $5,700, together with the interest thereon in the sum of $313.34. As to all the other expenditures made by the appellant on the Tehama County property, whether for principal, interest, taxes, or repairs, it would seem that the appellant, as administrator, should be allowed at least such proportionate part as was in fact due from the estate, or would have been due from the decedent had she lived. Whether or not it was necessary for the appellant to pay the entire amount of these items in order to protect the property and interest of the estate can be determined upon further proceedings in the court below, and the proportionate amount thereof properly chargeable to the estate of the decedent can be determined and allowed to the administrator. ▮ In addition, the court should, and must, allow to the appellant the commissions due him as administrator, for the statute contemplates that the amount of such commissions is to be ascertained when the final account is rendered. (*Estate of Miner*, 46 Cal. 564, 572.) Under our decisions, an administrator, while chargeable with losses resulting from his default or neglect, is, nevertheless, allowed his commissions. (*Estate of Carver*, 123 Cal. 102, 105 [55 Pac. 770].) The one should be balanced against the other. (11 Cal. Jur. 1158, sec. 763, and authorities there cited.)

The order appealed from is reversed, with directions to the court below to proceed in the manner herein suggested.

Richards, J., Shenk, J., Seawell, J., Preston, J., Curtis, J., and Langdon, J., concurred.