Estate of William F. Markham, Deceased, Ben H. Brown, Administrator v. Commissioner.
Estate of Markham v. Commissioner
Docket No. 108332.
United States Tax Court
1943 Tax Ct. Memo LEXIS 259; 2 T.C.M. (CCH) 244; T.C.M. (RIA) 43281; June 9, 1943
*259 1. The amount of income derived by petitioner from forfeiture of a lease by its lessee and recovery of possession of a building erected on the premises by the lessee determined upon the record. 2. An amount recovered from a lessee to reimburse petitioner-lessor for the payment in the lessee's behalf, upon the latter's default in payment, of special assessments, held not to constitute taxable income to petitioner. 3. An estate held entitled to deduct expenses of upkeep and depreciation of a residence which the estate was required to hold pending a will contest, notwithstanding attempts to rent the premises were unsuccessful in the tax years. J. Everett Blum, Esq., and Bayley Kohlmeier, Esq., for the petitioner. Samuel Taylor, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Income tax deficiencies have been determined for the calendar years 1937, 1938, and 1939, in the respective amounts of $20,928.95, $653.93, and $885.99. In this proceeding petitioner seeks a redetermination of these deficiencies and particularly urges error on the part of the respondent in finding (1) that a profit was realized when petitioner came into possession and control *260 of a certain building upon the forfeiture by the lessee of his leave, and (2) that a gain was realized from the collection of a judgment covering reimbursement for payment by petitioner of certain special assessment bonds that were the obligation of another lessee of property owned by petitioner. A third error alleged is respondent's refusal to allow depreciation and the deduction of certain expenses incurred in connection with a piece of property which at one time had been the home of decedent and later was the home of his widow, the deduction sought relating to a time subsequent to the death of the widow in the latter part of 1937. Some of the facts were stipulated and oral testimony was offered. Findings of Fact Petitioner is the estate of William F. Markham, who died April 30, 1930. The estate's income tax returns for the years in dispute were filed in the sixth district of California. Decedent's widow died in the latter part of 1937. In July 1926, decedent and his wife leased lots 9 to 16, block 2438, at the northwest corner of Sunset and Vine Streets in the section of Los Angeles known as Hollywood, on a 99-year lease. The lease provided, among other things, that the lessee *261 would erect a building on the premises and upon termination of the lease through forfeiture for breach of its covenants, or through its expiration, the building would become the property of the lessor. Certain frame dwelling houses were on the property at the time the lease was entered into and these buildings were removed by the lessee to make way for the new building which was to be erected pursuant to the terms of the lease. The new building was erected by the lessee at a cost of $65,256.75, the building occupying lots 9, 10, and 11 of block 2438. The building was completed on January 10, 1928, and consisted of a two-story brick store and office building with a frontage of 160 feet on Vine Street and a depth of 150 feet on Sunset Boulevard. The lease was assigned and some years later the assignee of the lease defualted in its terms. On January 30, 1937, the petitioner took possession of the property. The building was at a valuable intersection with excellent future prospects. Its fair market value as of January 30, 1937 was $40,000. The fair market value of lots 9, 10, and 11 of block 2438, the land on which the building was situated, as of that date was $180,000. Petitioner *262 carried full coverage fire insurance on the building in the amount of $80,000 during 1937, 1938, and 1939. The petitioner spent $12,142.52 in 1939 and 1940 in order to give the building a "stream-lined exterior effect." In addition to said amount, one of the lessees improved the main store on the corner at a cost of $15,000 in 1939. The value of the land and the building on January 30, 1937 was $220,000. The building on the leased premises had a life not to exceed 40 years. The estate tax return of the decedent Markham showed a value of $428,571 for lots 9 to 16, including the improvements thereon and the value of the lease thereon. In determining the estate tax respondent used the value set forth in the return. The return shows no segregation of the fair market value of the building itself as of that date. Under a lease other than the lease on lots 9 to 16 of block 2438, entered into in 1926 by decedent and his wife, the lessee agreed, among other things, to pay street improvement assessments upon the leased property. The lease was assigned to various parties who assumed its obligations. In July 1930, special assessments for the opening and widening of Cahuenga Boulevard in Hollywood *263 became liens against the property in the amount of $16,299.73. The assignee of the lessee then in possession failed to pay these special assessments as well as certain other sums which it was obligated to pay under the terms of the lease. Sometime prior to January 18, 1932, petitioner paid on account of these special assessment bonds the sum of $16,299.73. The lease was declared for feited and possession of the premises recovered by petitioner on June 30, 1931. Thereafter the petitioner sued the receivers of the assignee of the lease and obtained a judgment on which, in the year 1937, the sum of $35,000 was collected. Of this sum of $35,000, $15,272.15 was credited to the item of $16,299.73 paid by the petitioner on the street improvement bonds. During the taxable years here in question petitioner was on a cash basis. Of the sums collected in 1937, the petitioner returned as taxable income all except the amount of $15,272.15. The Commissioner included the latter sum in petitioner's taxable income. Included among the assets of the Estate of William F. Markham during the years 1937, 1938 and 1939 was certain property known as "Homeland." Said property had been, prior to the death *264 of William F. Markham, the residence and home of said decedent and his wife. Under the terms of the last will and testament of William F. Markham his widow was given a life estate with remainder over to the children of Harlan G. Palmer. The widow died during the latter part of the year 1937. At the time of her death there was a will contest pending as to the validity of the will of William F. Markham, and the property known as "Homeland" could not be distributed to the remaindermen and was retained as an asset of the estate under the jurisdiction of the Superior Court of the State of California in and for the County of Los Angeles. After the death of Mrs. Markham and the appointment of Ben H. Brown as the administrator of the Estate of William F. Markham, the administrator attempted to rent the property. The property was listed with a real estate agent and continuous efforts were made to rent said property. The property was not rented during the years 1937, 1938, and 1939. During the years 1937, 1938, and 1939, petitioner paid in the upkeep and maintenance of "Homeland" the respective sums of $2,179.33, $3,820.54 and $4,186.64. The expenditures made in 1937 were at a time subsequent *265 to the death of Mrs. Markham. The allowable depreciation on the "Homeland" property for each of the years 1938 and 1939 is $3,636.36. Opinion ARUNDELL, Judge: The law is now well established that an owner and lessor of real estate realizes income upon the occasion of coming into possession of a building erected on the property by the lessee. Helvering v. Bruun, 309 U.S. 461. [1]
The fair market value of the building at the time of the forfeiture or termination of the lease is the measure of the income realized. The respondent has fixed the value of the building in this case at $40,000 and this figure the evidence supports. In fact, there is very little difference between the parties as to the value of the building itself, but petitioner contends that the building is unsuited to the lot and is really a detriment rather than a benefit; and that the property as a whole would be worth more without the building than with it. On this premise he argues no profit was realized and cites Mary E. Evans, 42 B.T.A. 246, *266 in support of his view. We are not convinced by the evidence that petitioner has the factual basis to support his argument. We think that the weight of the evidence supports respondent's determination. Petitioner urges, in the alternative, that it should be allowed to offset against the fair market value of the repossessed building the depreciated cost of certain dwellings that were on the property at the time of the lease, which dwellings were removed by the lessee to make way for the new building in 1928. Helvering v. Bruun, supra, is said to be authority for the allowance of such an offset as is here claimed; and such an allowance was made in Est. of Austin C. Brant, 44 B.T.A. 1306, 1311. The evidence offered by petitioner in support of this contention is, in our judgment, too unsatisfactory on which to base a factual finding. The buildings were erected by the decedent Markham in 1917. At the time of the trial no records or accounts which would give the cost of these buildings were in existence. Evidence was not offered as to the depreciation taken on the buildings from the date of their erection until the time of *267 their removal in 1928. Petitioners' witness attempted to estimate a cost and furnish other pertinent data, but this testimony was largely hearsay. Nor does the record show to our satisfaction the manner of treating the remaining investment in these dwellings at the time they were removed and the lease entered into in 1928. Petitioner offered some testimony as to the fair market value of the dwellings at the time of their removal to make way for the new building. However, any offset that might be allowed must be based on cost and may not be based on fair market value. Petitioner advances the further argument that as the over-all value of the property at the time of decedent's death was very much greater than the value of the real estate and building at the time the lease was forfeited in no true sense can it be said that it realized gain when it went into possession of the building in 1937. It is true that the property was included in decedent's estate at a very much higher value than the parties fix as the value in 1937 upon the occasion of the forfeiture. It does not appear, however, that for estate tax purposes the building as such was given a separate value in the hands of decedent *268 and it would appear most unlikely that the value was so determined. The lease at the time of the death of the decedent Markham had approximately 95 years to run and the life of the buildings at that time did not exceed 40 years. In such circumstances the building would not have had a value to the decedent-lessor. As we understand the Bruun case, the gain, if any, realized by the lessor upon the termination of the lease is in no wise affected by the fluctuating value of the land on which the building was erected. The gain realized has been held to be an ordinary gain and not a capital gain arising from an exchange. Estate of Austin C. Brant, supra. The second issue has to do with the proper treatment of the sum of $15,272.15 recovered from the lessee in reimbursement of an expenditure made by petitioner for street improvement assessments. During the year 1926, decedent leased another parcel of real estate for a term of 99 years, which lease was cancelled and the property repossessed during the year 1931. Under the terms of the lease the lessee was required to pay all taxes and assessments against the property arising during the term of the lease. *269 During 1930 and prior to the cancellation of the lease, assessments for street improvements in the amount of $16,299.73 were made and became a lien against the property. The lessee having failed to pay the levy, petitioner paid the assessment in full and thereafter brought suit against the lessee to recover the sum expended. A judgment was recovered in the full sum in 1936, and collection was made in 1937 to the extent of $15,272.15. Payment of special assessments made for the purpose of constructing local benefits have been regarded as in the nature of capital expenditures. Where such an expenditure is made by a lessee, it likewise regarded as a capital expenditure and is not to be regarded as additional rent. Duffy v. Central Railroad Co. of New Jersey, 268 U.S. 55. It is analogous to the making of an improvement by the lessee upon the leased premises and is accorded the same treatment for tax purposes. G.C.M. 5866,VIII-1 C.B. 200. The obligation to pay this assessment was that of the lessee and the obligation arose during the term of the lease. The fact that the lessor was required to pay the assessment to protect *270 its interest in the property cannot change the nature of the expenditure. What the petitioner recovered in its suit against the lessee was the sum which it had expended in the lessee's behalf and as the sum paid to discharge the special assessment would not have been income to petitioner if it had been paid in the first instant by the lessee, it is no more income to the lessor when he is reimbursed under the circumstances here present. On this point judgment must be for the petitioner. Respondent's refusal to allow the expenses of upkeep on the "Homeland" property for the period subsequent to the death of Mrs. Markham in 1937, and of depreciation thereon for the years 1938 and 1939, is apparently based on the fact that up to that time the property was not used for business purposes and that an unsuccessful attempt to rent it is not in and of itself sufficient to dedicate the property to business purposes under the rule in Heiner v. Tindle, 276 U.S. 582Rumsey v. Commissioner, 82 Fed. (2d) 158, certiorari denied, 299 U.S. 552. Respondent's position is undoubtedly in accord with our holdings *271 where the title to the property remains in the same person. But the property is now in the hands of the administrator; and he was entitled to its possession and was required by the law of California to keep it in good tenantable repair, California Probate Code (1933), section 581, In re Fulmer Estate, 203 Cal. 693, 265 Pac. 920, and to account for its rental value if beneficially used. See In re Rindge's Estate, 28 Pac. (2d) 705, 136 Cal. A. 263. The law of California has made the irrevocable decision that marks the change of the property to its business use. Judgment on this issue will go for the petitioner. There remains the question of depreciation on the building repossessed by petitioner in 1937. The respondent has allowed depreciation based on a cost of $40,000, which is the value fixed on the building at the time it was repossessed and the sum determined to be income to the petitioner in 1937. This sum is petitioner's cost and as the depreciation allowance is designed to permit the recovery of a taxpayer's capital outlay over the life of the property, the basis for the depreciation *272 allowance can never exceed the capital invested. Detroit Edison Co. v. Commissioner, 319 U.S. 98. Respondent is sustained on this issue. Decision will be entered under Rule 50. Footnotes
1. But cf. section 115 (a), Revenue Act of 1942, applicable to taxable years beginning after December 31, 1941.↩