[No. 3,391.]

.IN THE MATTER OF THE ESTATE OF MARY McQUEEN.

CHARGING ADMINISTRATOR WITH INTEREST.—An administrator who withdraws money belonging to the estate, from a solvent bank, where it had been drawing, and would have continued to draw interest, when he had sufficient money to pay the debts of the estate and expenses of administration without drawing it, does not thereby become chargeable with interest on the sum thus withdrawn, provided he does not mingle it with his own, or use it for his own profit, or deposit in a bank in his own name, or neglect to settle his account for a long time.

APPEAL from the Probate Court of the City and County of San Francisco.

The estate was in the hands of the Public Administrator. The money was withdrawn by him from the Hibernia Savings and Loan Society, on the 19th day of December, 1870. On the 15th day of January, 1872, he presented his final account. On the 16th day of April, 1872, the Court made an order charging him with the sum of three hundred and seventy-four dollars and fourteen cents interest on the sum withdrawn. The administrator appealed.

The other facts are stated in the opinion.

*Joseph Napthaly,* and *Wright & Nourse,* for Appellant.

The question presented for adjudication by this record is: Shall an administrator be charged with interest on money collected by him, when it is not alleged or shown that the funds have been used by him, or that he has delayed the settlement of the estate, for an unreasonable length of time? It would seem that a statement of the proposition would be sufficient. When it is shown that an administrator uses the funds of the estate, or when an executor, directed by the will to loan out the funds, fails to do so (as was the case *In Re Estate of Halbert,* 39 Cal. 597), in such cases he is properly chargeable with interest. Also, in cases of un-

reasonable delay, such as is related in *Mann* v. *Lawrence*, 3 Brad. Reports, 424, where the delay was six years.

The duties of the administrator, as thus shown, takes this officer outside of that class called ordinary trustees, and from that of guardians.

The distinction is so clearly set forth by Judge REDFIELD, in reviewing the Massachusetts cases on this subject, that paragraph 12, p. 888, vol. 2, is quoted entire:

"It seems to be held in Massachusetts that there is no ground for charging an executor with interest, unless he has received it, upon the funds under his control, or has been guilty of some neglect in applying the money to stop the accumulation of interest, against the estate, or else has put the money to his own use. But the rule is otherwise as to trustees of money kept for the sake of being so invested as to produce income; in such cases, where a guardian neglects to put his ward's money at interest, he is chargeable .with interest, and in case of gross delinquency, with compound interest." (See authorities cited.)

In New York it is held "that the omission to invest money by an administrator, where he is liable at any moment to pay it out, is no ground for subjecting him to the payment of interest." (2 Red. 887, citing *Jacot* v. *Emmett*, 11 Paige; *Burtis* v. *Dodge*, 1 Barb. Ch. 77.)

*R. W. Hent*, for Respondent.

Money withdrawn from such an institution as a savings and loan society is not the collection of a debt due the deceased, in the sense in which section one hundred and ninety-four of the Probate Act directs an administrator to "collect all debts due deceased." If it were, it would not be necessary for appellant to go beyond the statute itself to sustain

his proposition. Savings and loan societies, and especially the one in which the deceased had deposited her money, are quasi banks. They are intended as safe places of deposit of money and to pay the depositor interest thereon, provided he allows it to remain on deposit a certain length of time.

"The personal representative is not in the absence of all want of due care and watchfulness, to be held responsible for the loss of money belonging to the estate which is deposited in a bank of good repute, in the official name of such representative." (2 Red. on Wills, Sec. 75, p. 880, citing *Swinfeu* v. *Swinfeu*, 29 Beav. 211.)

"With respect to losses sustained by the failure of bankers, or other persons into whose hands the money of the testator has been deposited by the executor, the rule, at least in equity, seems to be that where the deposit was made from necessity, or conformably to the common usage of mankind, the executor will not be responsible for the loss." (2 Williams on Executors, p. 1647, and authorities there cited.)

An executor who allowed part of a testator's assets to remain invested in Mexican bonds for a year and seven months after the testator's death, and eventually sold the bonds at a lower price than might have been obtained by a sale at an earlier period, but who appeared to have acted throughout with diligence and good faith, was held, under the circumstances, not to be liable for the loss consequent on his not having sold them sooner. (*Buxton* v. *Buxton*, 1 Mylne & Cr. 80.)

As to the debts, except funeral expenses and expenses of last sickness, which are easily ascertained by the time letters are issued, there is no law compelling their payment before the expiration of a year from the granting of letters (Secs. 228, 243, Probate Act), and so far as they were concerned the appellant knew that the money withdrawn would not be needed before that time. We contend, therefore, that the

record shows not only that the money was in fact unnecessarily withdrawn, but inferentially that the administrator at the time he withdrew it actually knew that it would not be needed for the payment of debts before the end of the year; for whatever their amount, he would not be required to pay them before that time, nor for the payment of the expenses, for they were ascertainable at the time of withdrawal.

By the Court, CROCKETT, J.:

The intestate, at the time of her death, left on deposit with the Hibernia Savings and Loan Society a considerable sum of money, which was drawing interest, and on which interest would have continued to be paid so long as the money remained on deposit. But the administrator, soon after his appointment, withdrew the fund from the bank, and on rendering his final account for settlement charged himself with the principal sum, but without interest. On the settlement of the account the Probate Court decided that the administrator was chargeable with interest on this sum from the time of its withdrawal from the bank, and ordered the account to be amended in this particular. The only question on this appeal is whether or not this ruling was correct. The Court finds the facts to be:

"That the administrator had, at all times, sufficient money in his hands to make all payments made by him without withdrawing said sum of four thousand nine hundred and thirty-four dollars and seventy-nine cents, or any part thereof, from said Hibernia Savings and Loan Society, and did not require to have said money, or any part thereof, in hand to pay off debts or expenses, and that by said sum being withdrawn the estate had been deprived of dividends which would have accrued thereon.

"That the amount of the debts and expenses could not be

known to the administrator before the expiration of ten months.

"That the said Hibernia Savings and Loan Society, for many years prior to the withdrawal of said sum, had been and ever since has been a corporation formed for the purpose of receiving deposits and loaning the same for interest on real estate security, paying semi-annual dividends to depositors at the rate of from nine to twelve per cent per annum, and of universally recognized solvency.

"That the place of deposit of said sum was a proper one and of acknowledged safety, and that a man cautious and prudent in his own business could have permitted it to remain in said society."

The correctness of the findings of fact are not questioned; but it is insisted that on these facts the administrator is not liable for interest. The Court does not find that the administrator used for his own profit the fund withdrawn from the bank, nor that he mingled it with his own money; and in the absence of a finding to that effect, the presumption is that he did his duty, and neither used the money for his own advantage or mixed it with his own. The Probate Court evidently proceeded on the theory that by withdrawing the fund from the bank where it was drawing interest, when there was no apparent necessity for doing so, for the payment of debts, or the expenses of administration, the administrator had prevented the accumulation of interest, and should therefore pay the interest himself. The authorities are uniform to the effect that an executor, administrator, or other person acting in a fiduciary capacity, will not be allowed to traffic, for his own advantage, in the trust fund under his control. But, as if for the purpose of putting that question beyond controversy, section two hundred and seventeen of our Probate Act provides that "he shall not make profit by the increase * * * of any part of the estate." If it had appeared

that the administrator had received interest on this money, it is clear he should have been made to account for it. But the rule goes further, and it is now well settled that a trustee having the control of a trust fund will be liable for interest, "if he mingles the money with his own, or uses it in his private business, or deposits it in bank in his own name, or neglects to settle his account for a long time, or to distribute or pay over the money when he ought to do so." (Perry on Trusts, Sec. 468, and authorities there cited.)

And if it appear that the trustee has made a profit by the use of the fund, exceeding the legal rate of interest, he will be chargeable with the profit actually realized. But, as already stated, we are not at liberty to infer from this record that the administrator has abused his trust in this respect, and it is not pretended that the settlement of his accounts has been unreasonably delayed. If he is liable for interest, as the facts are here presented, it is solely on the ground that he withdrew the money from the bank under the circumstances already stated. Section one hundred and ninety-four of the Probate Act provides that "the executor or administrator shall take into his possession all the estate of the deceased, real and personal, and shall collect all debts due to the deceased." Money on deposit in a bank to the credit of the deceased may not constitute a "debt," in a strict, technical sense. But whether it be so or not, the statute contemplates that the executor or administrator shall reduce into his possession, with all reasonable dispatch, the property of the estate; and if he find money on deposit, even though the bank be one of admitted safety, and of undoubted credit, he must be allowed to exercise his discretion in good faith as to the propriety of reducing the money into his actual possession, so as to be ready to meet any exigency in the affairs of the estate. If he had permitted the money to remain on deposit, under the circumstances stated in the findings, the administrator may not have been liable, even

though the money had been lost by a sudden failure of the bank, through some unforeseen calamity. But if he decided in good faith, and in the exercise of his discretion, that the interests of the estate demanded that the money should be reduced into his actual possession, we are not prepared to say that he thereby became liable for interest, merely because the money was withdrawn from the bank, in the absence of any showing that he acted in bad faith, or used the money in his private business, or mingled it with his own, or deposited it in bank to his own credit. We are not inclined to relax, in any degree, the stringency of the rule by which executors, administrators, and others, holding money in a fiduciary capacity, are forbidden to make a profit out of the trust fund, or to mingle it with their own property, or to deposit it in bank in their individual names, and to their private credit. It is their duty to preserve the trust fund intact, and to keep it separate and apart from their private funds, on pain of being held accountable for interest, or for such greater profit as they may have realized from the use of the money. It is only in this method that trust funds can be safely preserved, and great abuses prevented.

Judgment reversed, and cause remanded for further proceedings.

RHODES, J., dissenting:

In my opinion the Court did not err in charging the administrator with interest—there being not even a plausible reason for his withdrawal of the funds from the bank.