[No. 3,176.]

## IN THE MATTER OF THE ESTATE OF P. L. MINER, DECEASED.

WHEN JUDGMENT WILL NOT BE REVERSED FOR ERROR. — When the Probate Court has fixed the basis upon which an administrator's account is to be settled, an error in directing the creditors of the estate to restate it, if the administrator does not restate it himself, will not justify a reversal of the judgment, as the administrator sustains no injury by it.

SETTLEMENT OF ADMINISTRATOR'S ACCOUNT. — If an administrator, acting in good faith and for what he believes the best interest of the estate, forecloses a mortgage given to the intestate, he is entitled, in the settlement of his account, to be allowed the costs paid out by him on the foreclosure.

IDEM. — If an administrator forecloses a mortgage given to his intestate upon land on which there is a prior mortgage, and, at the Sheriff's sale, becomes the purchaser, at a sum too small to satisfy costs and both mortgages, the Court, on the settlement of his account, should not charge him with the amount of the mortgage debt and stipulated interest, but with the amount of his bid, less the sum paid by him for costs and to satisfy the former mortgage and with legal interest thereon.

IDEM. — In the settlement of an administrator's annual account he should be charged with the amount of his own note to the deceased, if there is one, and the interest therein stipulated to be paid.

AN ADMINISTRATOR'S COMMISSIONS. — An administrator's commissions should not be allowed him in the settlement of his annual account, but such commissions are to be ascertained and allowed him when he has rendered his final account and the estate is ready for distribution.

IDEM. — An administrator cannot set off his commissions on the settlement of his annual account, against a sum due by him to the intestate, and with which he is charged.

ALLOWANCE OF ADMINISTRATOR'S ACCOUNT. — If the intestate in his lifetime had contracted for the services of another for one year, at stipulated wages per month, and died soon after, and the employé continues to perform the services for the year with the assent of the administrator, and his services are necessary for the protection of the estate, the administrator should be allowed the wages paid him in the settlement of his account.

ADMINISTRATOR MAY CHARGE FEES PAID COUNSEL. — An administrator acting in good faith, is entitled to the aid of counsel in all litigation touch-ing the estate, and to be allowed, in his account, the reasonable compensation paid such counsel.

APPEAL from the Probate Court, Tehama County.

The facts are stated in the opinion.

*Winans & Belknap,* and *Doyle & Barber,* for Appellant.

Under no conceivable rule or argument can appellant be justly held liable on this one-thousand-dollar note, for it did not constitute assets in his hand. In *Ruggles* v. *Sherman,* 14 Johns. 446, it is held that an outstanding debt due the testator or intestate, is not assets in the hands of his executors or administrator, where there has not been gross negligence, or collusive, fraudulent, and unreasonable delay in collecting it. And in *Marvin* v. *Stone,* 2 Cow. 781, it is held that choses in action are not assets, nor deemed such until actually received by the administrator. Conceding that contestants have a remedy against the administrator, under the decision in *Tompkins* v. *Weeks,* by reason of his bid upon the property of five thousand dollars, such remedy has been entirely mistaken in this case. That decision gave no right whatever to proceed upon the one-thousand-dollar note, but determined in principle, that Tompkins, by bidding five thousand dollars on the ranch, had rendered himself personally liable to the estate for that sum, less the amount of prior liens on the property.

The Court erred in refusing to credit appellant with the two hundred and sixty-seven dollars and fifty cents, costs paid by him in the foreclosure suit. (*Collins* v. *Hoxie,* 9 Paige Ch. 86; *Hosack* v. *Rogers,* 9 Paige Ch. 461; *Moses* v. *Murgatroyd,* 1 Johns. Ch. 473.)

Even if the action brought by the administrator to recover a debt due the intestate is dismissed upon the merits, yet if the administrator brought it in good faith, he will not

be personally charged with the costs. (*Roosevelt* v. *Elli-thorp*, 10 Paige Ch. 415; *Dyer* v. *Potter*, 2 Johns. Ch. 152.)

The Court erred in charging appellant with interest, at the rate of one per cent per month, on his own note for one thousand nine hundred dollars, dated March 8th, 1861. It is true that the note bore interest at one per cent per month on its face, but it was given during the lifetime of the intestate; and we claim that when it came into the hands of appellant, as administrator, and was inventoried as part of the property of the estate, it ceased to bear interest against him. This would not have been the case, of course, had it been the note of another person, until payment by the maker; but with the administrator it is different, because in the absence of any showing that he continued to use the money for his own purposes, and in his own business, he presumptively held it in his custody, as administrator.

*W. H. L. Barnes*, for Respondent.

Counsel say that the Court erred in charging the appellant, as administrator, with the Salisbury and Alpaugh note, for one thousand dollars, dated February 14th, 1860, with interest thereon at three per cent per month from that time. This note had come into the hands of the administrator, as appears by the inventory. No account or report is presented by the administrator of what he has done with it, or what has become of it. This he was bound to do. We know, otherwise, that it became absorbed in the purchase of the Alpaugh Ranch, which purchase the Supreme Court has declared, left the land the property of the administrator, personally, and denied him credit for the purchase as against the estate. Part of the purchase money was the note in question, amounting at the time of the purchase, with interest, to two thousand eight hundred and sixty-eight dollars. He has used it and absorbed it in this operation. He is the owner of the land, so far as the estate is concerned,

and the land nowhere appears in his account, it will be observed. He has, therefore, acted upon the intimation of the Supreme Court, and has taken the land to himself, so far as the record shows; and having appropriated this portion of the estate of the deceased for the purpose of that purchase, and never having paid or accounted for it in any way, he is properly chargeable with it.

In respect to the third point, that the Court erred in charging appellant with interest at the rate of one per cent on his own note for one thousand nine hundred dollars, dated March 8th, 1861, we have only to say, it has never been paid, and at the date of the decree remained unpaid, no sufficient legal excuse or reason being given or assigned why the same was not paid; and the fact is, that M. M. Tompkins individually owed the estate one thousand nine hundred dollars, with interest at one per cent per month from the 8th of March, 1861, which, at the date of the decree appealed from, had not been paid.

This administrator, as such, appeals from an order of the Probate Court giving validity and life and value to the estate, because it affects him individually. His opposition is somewhat anomalous; and we venture to say it is the first time in the history of Probate Courts that an administrator of an estate charges a Probate Court with error in deciding that a debtor to the estate was bound to pay a debt with interest.

If Mr. Tompkins, debtor, had desired to save interest upon his own note, it was his duty and privilege to pay it. That would have made an end of the matter.


By the Court, CROCKETT, J.:

This is an appeal by the administrator from an order of the Probate Court settling his annual account, which was contested by Weeks and Johnson, two of the creditors. At

the hearing the Court disallowed certain credits claimed by the administrator, and debited him with several sums which were omitted from the account. In the opinion of the Probate Court, it became necessary to restate the account on the basis settled at the hearing, and an order was entered to that effect, and directing that if the administrator "shall neglect or omit to so restate and present the same within ten days from the date hereof, the said J. S. Johnson and E. J. Weeks shall be and they are hereby authorized to restate and present the same." The administrator having failed to obey the order, the account was restated and presented by Johnson and Weeks, and settled by the Court. This ruling, and the disallowance of certain items on the credit side, and the addition of certain others to the debit side of the account, are relied upon as erroneous.

We do not understand the appellant to claim that the account, as restated, varies in any substantial particular from the basis settled by the Court at the hearing, or that the result would have been substantially different if the administrator had himself restated the account in obedience to the order of the Court. If it was error to authorize the creditors to restate the account, it has wrought no injury to the administrator, and would not of itself justify a reversal of the judgment. But as the Court had already settled the basis on which the account was to be stated, we do not see that it was material by whom the mere clerical duty of arranging the items in proper order was performed.

Amongst the debts due to the estate was a promissory note made by Salisbury and Alpaugh to the intestate for one thousand dollars, bearing interest at the rate of three per cent per month, and secured by mortgage on the Alpaugh ranch. But one Toomes held a prior unsatisfied mortgage on the ranch. The makers of the note were insolvent, and the administrator commenced an action to foreclose the mortgage, making Toomes a party defendant. A decree of fore-

closure was obtained directing a sale of the mortgaged premises, and that the proceeds be applied: First, to the payment of the costs of the action; second, to the payment of the mortgage to Toomes; and third, to the payment of the mortgage to Miner. At the sale the administrator purchased the ranch at the price of five thousand dollars, on behalf of the estate, and the Toomes mortgage, amounting to two thousand nine hundred and thirty dollars, and the costs, amounting to two hundred and sixty-seven dollars and fifty cents, were paid by the administrator. The mortgage debt due to the estate then amounted, with the accrued interest, to two thousand two hundred and thirteen dollars and forty cents. In his next annual account the administrator credited himself with the amount paid to satisfy the Toomes mortgage and the costs of the action. These items were objected to by the creditors, but were allowed by the Probate Court. On appeal to this Court the payment of the Toomes mortgage was disallowed, the Court holding that the administrator had no lawful authority to purchase the ranch for the estate at the foreclosure sale, and that the purchase must be deemed to have been made for himself and not for the estate. (26 Cal. 57.) On the return of the case to the Probate Court, the administrator filed an amended account; from the credit side of which was omitted the item of two thousand nine hundred and thirty dollars paid to satisfy the Toomes mortgage. But there was included on the credit side of both the .original and amended accounts an item of two hundred and sixty-seven dollars and fifty cents for the costs of the foreclosure suit; and an item of eight hundred dollars for money paid to George C. Hickox; and on the same side of the amended account an item of two hundred and seventy-five dollars for counsel fees, on the hearing of the former appeal in this Court; and another

CAL. REPS. XLVI—72

item of eight hundred dollars paid to Hickox.    All these
items were excepted to by the contesting creditors, and were
disallowed by the Probate Court.    The Court also added to
the debit side of the account the amount of the Salisbury
and Alpaugh note, which, with interest at the rate of three
per cent per month, then amounted to four thousand six hun-
dred and forty-seven dollars; and also charged the adminis-
trator with his own note to the deceased for one thousand
nine hundred dollars; which, with the interest at one per
cent per month, then amounted to three thousand nine hun-
dred and sixty-six dollars and fifty-seven cents.  These rulings
are complained of as error.

    The item of two hundred and sixty-seven dollars and fifty
cents for the cost of the foreclosure suit, was improperly dis-
allowed.    There is nothing to impeach the good faith of the
administrator in foreclosing the mortgage; on the contrary,
it is clear that in this transaction he was acting in what he
deemed to be the interest of the estate.    So far as appears
from this record, it was his duty to foreclose the mortgage;
and there is no reason why he should be denied a credit for
the cost of the proceeding.    The Court also erred in charg-
ing him with interest at the rate of three per cent per month
on the note of Salisbury and Alpaugh.    The estate is cer-
tainly in no worse condition than if the mortgaged premises
had been sold at the foreclosure sale to a stranger, instead
of to the administrator, for five thousand dollars.    In that
event there would have been paid out of the purchase money:
First, the costs of the action, amounting to two hundred and
sixty-seven dollars and fifty cents; second, the prior mort-
gage of Toomes, amounting to two thousand nine hundred
and thirty dollars and ninety-four cents, and leaving only the
sum of one thousand eight hundred and one dollars and fifty-
six cents to be applied on the mortgage held by the estate.
This sum represents the interest of the estate in the proceeds
of the sale; and if the whole purchase money had then been

paid in cash, the administrator would have received this sum, and no more, to the credit of the estate. This Court having decided that the purchase by the administrator must be held to have been made on his private account, it results that after having paid the costs of the foreclosure and the prior mortgage, he remained a debtor to the estate, for its share of the proceeds of the sale, amounting as we have seen to one thousand eight hundred and one dollars and fifty-six cents. If he had then paid the money, and had thenceforth kept it separate from his private funds, it is clear that this sum would have been the limit of his liability on account of this transaction. But the money was not in fact paid, and he became a debtor to the estate for the amount thus remaining in his hands, not separated or set apart from his private funds. He is, therefore, liable only for this sum and for interest, at the legal rate; but not at the rate stipulated in the note, which has been merged in the judgment. The interest must therefore be reduced from three per cent per month to the rate fixed by law when there is no written stipulation as to the rate, and must be computed, not on the original amount or from the maturity of the note, but on one thousand eight hundred and one dollars and fifty-six cents, from the date of the foreclosure sale. But we think there was no error in charging the administrator with the amount of his own note and the stipulated interest. It is a debt due to the estate and has never been paid. The money has remained in his hands, not separated or set apart from his private funds or been devoted to the uses of the estate. Under what circumstances an administrator will become liable to pay interest is discussed *In the Matter of the Estate of Mary McQueen*, 44 Cal. 584, and upon the principles settled in that case we think the administrator cannot escape the payment of interest. Nor can he set off the debt against his commissions. Section two hundred and twenty-one

of the Probate Act provides that an administrator "shall be. allowed commissions upon the amount of the whole estate accounted for by him, as follows : For the first thousand dollars, at the rate of seven per cent," etc. The statute contemplates that the amount of commissions due to the administrator is to be ascertained when he has rendered his final account and the estate is ready for distribution. It is then for the first time that it can be ascertained what is "the whole estate accounted for by him;" and if the commissions were to be settled and allowed, piecemeal, as the administration progressed, it might happen that after receiving a large amount of commissions, the administrator in the end would fail to account for a considerable share of the estate. If the commissions had been reserved until the final accounting, they could be deducted from the deficit; but if paid in advance, might be lost to the estate. We think the commissions can be allowed only on a final accounting. The next question relates to the payments to Hickox, and we think they ought to be allowed. It appears from the evidence that in the lifetime of Miner, Hickox entered into a contract with him for certain services to be performed by the latter for one year, at a compensation of two hundred dollars per month. Miner died soon after Hickox entered upon the performance of his duties, and thereafter the duties were performed as before, with the knowledge and assent of the administrator. The proof shows that the services were necessary for the protection and preservation of the interests of the estate, and it is not pretended that the administrator acted in bad faith. We think these payments were proper and valid charges against the estate and ought to have been allowed. We are of the same opinion in respect to the payment of two hundred and seventy-five dollars to Cadwalader for the argument of the former appeal in this Court. An administrator acting in good faith is entitled to the aid of counsel in all litigation

concerning the estate, and we see nothing in this case to take it out of the general rule.

Judgment and order reversed and cause remanded for further proceedings in accordance with this opinion.