[Civ. No. 4390. Third Appellate District.—July 27, 1931.]

In the Matter of the Estate of SARAH MILDRED JONES, etc., Deceased. INDEPENDENCE INDEMNITY COMPANY, Appellant, v. DONALD McDOUGALL, Administrator, etc., et al., Respondents.

John Ralph Wilson for Appellant.

White, Miller, Needham & Harber for Respondents.

PRESTON, P. J.—This is an appeal from an order of the superior court settling the second annual account and report of D. W. Carmichael, as executor of the last will of Sarah Mildred Jones, deceased.

The appeal is by the Independence Indemnity Company, the surety upon the official bond of Carmichael, as executor of the last will of decedent.

The facts are briefly these: Sarah Mildred Jones died testate on February 12, 1925. Her will named D. W. Carmichael as executor and Lulu E. Parsons as executrix, but did not waive bonds. The Superior Court of Sacramento County, after proper proceedings had, admitted the will to probate and named the said D. W. Carmichael as sole executor and required that he give a bond in the sum of $50,000. Carmichael duly qualified as such executor and the said appellant Independence Indemnity Company gave bond to the state of California, as provided by law, in the sum of $50,000, which bond was approved by the judge of the superior court and letters testamentary were thereupon issued to Carmichael, and he proceeded to administer said estate.

Notice to creditors was given, an inventory and appraisement filed, and such other steps as are usual in administering estates in California were taken. Among the assets of said estate were two promissory notes, each executed and delivered by Carmichael to said Sarah Mildred Jones in her lifetime—one in the sum of $2,500, dated February 5, 1925, due ninety days after date, with interest at the rate of seven per cent per annum, and the second note, dated January 2, 1924, executed and delivered by Carmichael and his wife, Myrtie R. Carmichael, for $50,000, due on or before three years after date, with interest at six and one-half per cent per annum, payable annually, upon the principal sum of which $12,000 had been paid prior to the death of Mrs. Jones.

Thus it will be seen that both notes became due after the death of Mrs. Jones. These notes were inventoried and appraised at their face value.

On July 24, 1926, Carmichael returned and filed his first report and account of his administration of said estate, which, after proper proceedings, was approved by the court on August 9, 1926. On March 10, 1930, appellant Independence Indemnity Company filed a petition in the superior court asking to be released from the bond of Carmichael as executor, and in response to the citation issued on this petition, Carmichael filed his second account, which shows both notes above mentioned charged as property of the estate of decedent, in his hands as executor. Thereafter, on April 2, 1930, Carmichael tendered his resignation as executor. On May 16, 1930, the court made an order settling the said second account and revoking Carmichael's letters testamentary. Thereafter, Donald McDougall, the public administrator of Sacramento County, was appointed administrator with the will annexed of said estate. No appeal was taken by Carmichael from the order settling said second account and the appeal is as above stated by the surety on Carmichael's official bond.

Respondents contend and the trial court held that under section 1447 of the Code of Civil Procedure the appellant, who is Carmichael's surety, is liable to the estate for the payment of said notes.

Appellant, on the contrary, contends that it has shown that Carmichael was insolvent at the time he became executor

and continued to be insolvent during the entire term of his administration of said estate and could not have paid said notes and therefore, his surety is not liable for the payment thereof.

Under the early common law the naming of a debtor as an executor of the will of the creditor operated as a discharge of the debt, except when necessary to pay demands of creditors of the estate. The reason for this rule was that the testator, by making the debtor an executor, voluntarily destroyed the only remedy or means by which the debt could be collected. In the course of time the opposite of this rule became recognized as the common law in the United States, and placed an executor, who was a debtor of the testator, in a position almost as excessively burdensome as formerly it had been advantageous. Under this last rule, not only was the debt to the estate not considered waived or discharged, but it was taken as *actually paid in cash, due at once on the appointment of the executor, so that he was held accountable for the money equivalent of his debt irrespective of whether it had in fact been paid or whether the executor was insolvent and could not pay it.*

The theory underlying this doctrine is that since the executor cannot demand payment of himself, nor sue himself, and since he is bound to account for his own debts, the conclusion is inevitable that the debt must be considered as assets in his hands as executor. (11 R. C. L., pp. 115–119.)

█ Much controversy formerly existed in California and elsewhere as to the applicability and extent of these two common-law rules, and, therefore, the legislature of this state in 1872, supposedly for the purpose of setting all such questions at rest, enacted section 1447 of the Code of Civil Procedure, which reads as follows:

"The naming of a person as executor does not thereby discharge him from any just claim which the testator has against him, but the claim must be included in the inventory, and the executor is liable for the same, as for so much money in his hands, when the debt or demand becomes due."

Thus it will be seen that this section of the code treats a debt or demand due from the executor from the time it becomes due, as so much money in his hands as executor belonging to said estate.

In the early case of *Treweek* v. *Howard,* 105 Cal. 434 [39 Pac. 20, 23], the facts are very similar to those in the case at bar, and there the court, in discussing the meaning and extent of the surety's liability under section 1447 of the Code of Civil Procedure, said:

"Thus, it will be seen, the law treats a debt or demand due from the executor from the time it becomes due as so much money in his hands.

"This debt was due, as is shown by the pleading, long before the death of the testator, and hence was properly included in the inventory as money in the hands of the executor.

"The law required him to so report it, and had he failed to do so, and taken the oath required of him by section 1449, he would have been guilty of perjury.

"The sureties are presumed to have signed the bond in view of the law as it existed, and are as liable as they would have been had section 1447 been incorporated in the bond.

"This debt was as money in the hands of the executor, and, as such, was a part of the estate for the due administration of which the sureties became liable, just as they did for the residue thereof.

"The poverty or riches of their principal, the condition of estate, where and how invested, were proper subjects of inquiry for the sureties in determining whether or not to become responsible, but cannot be urged as reasons to excuse them from the liability which they assumed.

"Nor can the representations of their principal as to his financial position, or his failure so to do, avail the sureties. Should such circumstances prevail to release sureties, it is apprehended few would be bound.

"The executor was bound under the law as for money in his hands, and the sureties must be presumed to have known it. Beyond this, and stripped of verbiage and accessories which cannot control in the decision, the simple fact remains that Bowman was insolvent, and the sureties were not aware of that fact, or of his indebtedness to the estate.

"The case serves to illustrate the wisdom of Solomon, where he says (Proverbs, xi, 15): 'He that is surety for a stranger shall smart for it, and he that hateth suretyship is sure.' "

The statute is considered again in the case of *Minifie* v. *Rowley*, 187 Cal. 481, 486 [202 Pac. 673, 675], and there the court said:

"On June 3, 1915, defendant Forrest S. Rowley was appointed an executor of the will of Samuel Jones, the last surviving partner of the firm to which the debt herein sued upon is alleged to have been due. 'The naming of a person as executor does not thereby discharge him from any just claim which the testator has against him, but the claim must be included in the inventory, and the executor is liable for the same, as for so much money in his hands when the debt or demand becomes due.' (Code Civ. Proc., sec. 1447.) As a necessary consequence, if defendant Forrest S. Rowley owed the ten thousand dollars here in controversy on June 3, 1915, when he became executor, he became chargeable with that sum as for so much money in his hands and continued liable therefor, irrespective of the running of the period of the statute of limitations against the debt itself, by reason of the change in the character of his obligation due to his intervening fiduciary capacity. (*Treweek* v. *Howard*, 105 Cal. 434 [39 Pac. 20].)"

Again, in the *Estate of Clary*, 203 Cal. 335 [264 Pac. 242, 244], the Supreme Court adopted the opinion of this court, in which it is said:

"The proceedings had in the first instance leading to the first appeal and the proceedings had in the appeal now before us, were and both are based upon section 1447 of the Code of Civil Procedure, under the terms of which all moneys due from the executor to the testator at the time the executor qualifies *as such become assets of the estate of the testator in the hands of the executor and hence renders the executor liable for the same as if so much money was in his hands.*"

The law seems well settled that the special restrictions placed upon executors under section 1447 are not made applicable to administrators. (*Sanchez* v. *Forster*, 133 Cal. 614 [65 Pac. 1077]; *Estate of Walker*, 125 Cal. 242 [73 Am. St. Rep. 40, 57 Pac. 991].)

The true rule governing the liability of sureties of administrators in such case is declared in *Lyon* v. *Osgood*, 58 Vt. 707 [7 Atl. 5], and that decision has been approved by

the Supreme Court of this state in the two cases above cited. (See, also, sec. 1615, Code Civ. Proc.)

The legislature had the power to make a distinction between an administrator and an executor in the matter of their obligations to the estate. In appointing his debtor as his executor, the testator has reposed in him a peculiar trust which the legislature has seen fit to provide shall not be abused by the fiduciary. An executor so trusted has an even greater obligation to make payment than has an administrator, who receives his appointment usually because of kinship to the decedent. The legislature undoubtedly thought that the greater the trust, the more strict should be the accountability. Neither an executor nor an administrator can sue himself. All resort to legal process for the collection of a debt due from an executor or administrator to the estate was cut off by his assuming such office. In the case of an executor, the beneficiaries of an estate are powerless to prevent his appointment. He has deprived them of the ordinary process of the law for enforcing the payment of his debt, having voluntarily taken upon himself the right and duty to demand and receive and the corresponding duty of paying, the legal consequence of this position is that *his own debt to the estate should be conclusively presumed to have been paid and discharged.*

It is argued on behalf of appellant that section 1447 merely makes the executor *personally liable for the debt and not liable in his official capacity,* and therefore, his surety being only for the purpose of indemnifying him in his official capacity, is not liable in this case because Carmichael was insolvent at all times during his administration of said estate. We are unable to agree with this interpretation.

It will be noted that this section refers first to the naming of a *person* as executor and then says the *executor* (not the person named as executor) is liable for so much money in his hands. Therefore under section 1447 of the Code of Civil Procedure the debt of the executor to his testator being deemed and considered ''as so much money in his hands when the debt or demand becomes due'', he is liable for the same as *executor* and *if he fails to place the money in his hands as executor, he has not faithfully executed the duties of his trust according to law and his sureties are liable, irrespective of whether he was solvent or insolvent.*

We are not unmindful of the fact that a number of the courts of last resort, in other states, where a similar statute exists, have placed the same construction on their statute as that contended for in this case by appellant. Also, that the highest courts of a great number of states, which have a like or similar statute to our own, have taken the legislature at its word and have held the executor for so much money in his hands as we have done in the case at bar regardless of his solvency or insolvency, and have held bondsmen liable without any regard to the executor's ability to pay.

In states where the common law on the subject still obtains, the higher court's decisions are in hopeless conflict. We think our conclusion as to the intent and meaning of this statute is not only sustained by its plain and unambiguous language and by such cases as *Treweek* v. *Howard, supra,* and the other California cases above cited, but also by the fact that the legislature of 1901 amended section 1447 by adding thereto the following:

"Unless he proves that he had not, either at that time or at any time thereafter, any means wherewith to pay such debt or demand, or such part thereof as may remain unpaid, and that such inability did not arise from any fraud committed by him."

This amendment, along with others, was declared unconstitutional because of defective title and lack of publication, etc. (See *Lewis* v. *Dunne,* 134 Cal. 291 [86 Am. St. Rep. 257, 55 L. R. A. 833, 66 Pac. 478].) Several other attempts have since been made to amend said section without success.

In conclusion we might add that the evidence in the case at bar is insufficient to show that Carmichael was unable to pay the notes in question. He admitted that he had $33,000 worth of assets applicable in satisfaction of the notes and no effort was made to collect from Mrs. Carmichael and absolutely no testimony that she was insolvent.

A careful consideration of both the law and the facts leads us to the conclusion that appellant is liable on Carmichael's bond as executor of the last will of Sarah Mildred Jones for the payment of said notes.

The order appealed from is therefore affirmed.

Jamison (R. L.), J., *pro tem.,* and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 24, 1931.