[Civ. No. 9962.   First Appellate District, Division One.—January 24, 1936.]

In the Matter of the Estate of JENNIE C. D. MEYER, Deceased.   VIOLA CARRIE CARMEN PIERCY BURNETT et al., Appellants, v. X. RODWELL MEYER, as Executor, etc., Respondent.

Thomas, Beedy & Paramore for Appellants.

Tobin & Tobin and George A. Clough for Respondent.

TYLER, P. J.—Appeal from a decree settling a third and final account and of final distribution. The controversy arises over the shrinkage in the value of an estate due to the depression, and drought in the state of Nevada, where the greater part of the estate was situated. No fraud is charged in the administration.

The facts showed that decedent Jennie C. D. Meyer was the daughter of one William Dunphy, deceased. By the terms of the last will of the father, a part of his estate was left in trust during the lifetime of the daughter. She was given a power of appointment over one-eighth of his estate; that is to say, upon the death of Jennie C. D. Meyer the trust created by her father's will terminated, and by the terms thereof the trust property was to pass to such person or persons as were appointed under the last will of Jennie C. D. Meyer to receive it. The daughter exercised the power of appointment. She

made a will giving all of her estate, and also the interest in her father's estate over which she had a power of appointment, to her surviving husband, respondent herein, as residuary legatee, subject to a trust to convert it into money when and as he deemed it advisable, and he was then given a direction as such trustee to pay appellants, and a sister, Mary D. Flood, and a brother, James C. Dunphy, the sum of $10,000 each when the money was available. The sister and brother are not parties to this appeal. Jennie C. D. Meyer died in the city and county of San Francisco on January 25, 1926, being at the time of her death a resident of said city and county. On March 1, 1926, X. Rodwell Meyer, her surviving husband, respondent herein, qualified as executor under her will; letters testamentary were issued to him, and he has ever since been acting as such executor. The decedent left estate consisting of real and personal property in this state, and also in the state of Nevada. The real property in Nevada consisted of some 20,000 acres of land of the value of about $80,000, and some 1,000 head of cattle of the approximate value of $60,000. At the time of her death the total value of decedent's estate was estimated to be worth about $200,000. The estate has been in probate for some nine years and two accounts have been rendered and approved. For reasons hereinabove stated the estate has shrunken in value and little remains with which to pay the claims of the beneficiaries, and respondent has lost practically all of the large estate of which he was the residuary legatee. His third and final account was settled and approved and the estate ordered distributed. This is an appeal from the orders.

Appellants' main objection to the account is that it shows respondent received bonds of the value of $21,000 from the California estate, which as ancillary executor in Nevada he used in carrying on the hazardous Nevada ranch business. It is claimed that he had no power as executor to conduct a business, and having done so, and suffered a loss, the loss is his and not that of the estate. While an executor may have no such power, the principle has no application to the facts of this case. The evidence shows that the money received from the proceeds of the sale of the bonds was used to carry on litigation of the estate and to preserve the same after payment of taxes and other expenses, and the record also shows that at the time respondent took possession of the estate it

was indebted, and costly litigation ensued. The taxes and claims had to be paid. Then came the depression, followed by a drought in the state of Nevada which lasted several seasons. The cattle required feed to preserve them, which feed had to be purchased at a large expense. The record shows that respondent was anxious at all times to preserve and close the estate, but was prevented from doing so by reason of the extensive litigation with which the estate was confronted. When finally respondent was in a position to sell, the cattle and lands brought little more than sufficient to pay the debts of the estate in Nevada. The evidence does not sustain appellants' contention that respondent carried on the business in which the decedent was engaged at the time of her death. All that respondent did was to preserve the estate. Moreover, counsel for appellants fail to point out any objectionable item of expenditure in the account. All of the disbursements in connection with the Nevada ranch were set out in the first and second accounts, which accounts were settled and approved several years ago. No objection was then made to them and no appeals were taken from the orders settling the accounts. The orders settling them have therefore become final and cannot now be questioned.

Appellants further object to the decree on the ground that it does not include certain oil and mineral rights situated in the county of Monterey and the profits or rents arising therefrom. These rights had, under a stipulation, been distributed to respondent unconditionally in the year 1929 under a decree of partial distribution. At the time they were so distributed it was the opinion of all parties that the assets of the estate were more than sufficient to pay the claims of appellants. The oil rights were considered of little value and counsel for appellants had purchased the one-quarter interest of James C. Dunphy in the same for the sum of $500. The purpose of the stipulation permitting distribution of the rights was to enable respondent to lease the same for the exploration of gas and mineral deposits, as the contemplated lessee was unwilling to accept a lease from the estate. The decree of partial distribution distributed to respondent all the right, title and interest which the deceased may have had in her lifetime or which her estate may have acquired since her death in and to any of the oil, oil rights, gas and mineral rights lying under said lands. The recitals in the decree of partial distribution

show that appellants were represented in court by the same attorneys who now appear for them, and it further appears from the evidence that they agreed to the decree. The oil lease subsequently entered into by respondent with the oil company provided that the rent of the property which was set apart to respondent, and which it is now claimed should be turned over to the trust, should be paid to respondent personally. This lease was signed by appellants. Whatever sums, therefore, respondent may have received from those rights were his personally, and he cannot be compelled to account for them in the estate. The decree of partial distribution was made by the consent of all parties over six years ago, was never appealed from and it has become final.

Appellants further object to the decree settling the final account and distributing the estate on the ground that the executor has violated an agreement on his part to maintain sufficient funds to pay the amounts due appellants as beneficiaries of the trust. While the stipulation upon which partial distribution was had did contain such agreement, it also provided " . . . acts of God and matters beyond the control of said X. Rodwell Meyer, of course, are excepted". Respondent has preserved all the assets possible, and the shrinkage of the estate was due to no fault of his, but rather to causes for which under his agreement he was not to be responsible.

Appellants further claim that respondent collected from the executor of the estate of James C. Dunphy, deceased, the sum of approximately $17,000, for which no accounting was ever made. There is no evidence in the record to sustain this contention. On the contrary, it shows that he never received such amount or any other sum from this source.

And finally, respondent claims that, by their action in contesting the accounts of the executor, appellants have violated the condition specified in the will authorizing them to receive any of the moneys which the testator directed the trustee to pay to them. The testatrix provided in her will that the executor's accounts should not be questioned, but that the same should be accepted and received as absolutely true and correct. She further provided for a forfeiture of benefits to anyone refusing to confirm the provisions of the will. It is respondent's contention that appellants, by contesting the accounts, have brought themselves clearly within the inhibi-

tion contained in the will. The question is raised for the first time on appeal, for which reason it will not be considered.

In conclusion it may be said that whatever loss may be suffered by appellants as beneficiaries is due solely to the shrinking of the value of the estate and not to any acts or omissions on the part of respondent.

From what has been said it follows that the decree appealed from should be and it is hereby affirmed.

Knight, J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 19, 1936.